[Civ. No. 4805. Third Appellate District.—May 26, 1933.]

GREGORY SCANDALIS, a Minor, etc., Appellant, v. ALOYSIUS JENNY, etc., Respondent.

J. E. Ebert and W. E. Davies for Appellant.

Rich, Weis & Carlin for Respondent.

MILLER, J., *pro tem.*—This is an appeal from a judgment for defendant.

Plaintiff, a boy of the age of three years, was struck and injured by an automobile driven by defendant on July 23, 1931, on Shasta Street, in Yuba City, at about 6:30 o'clock P. M. Shasta Street is paved, and is forty-four feet from curb to curb, and runs in a northerly and southerly direc-

tion. Tea Garden Avenue crosses Shasta Street between 400 and 500 feet south of the scene of the accident. Defendant pleaded negligence on the part of plaintiff as the sole cause of the accident and resulting injury, and also that plaintiff was guilty of contributory negligence.

It appears from the testimony that seven or eight other small children were playing in Shasta Street at a point opposite the Scandalis home, which was on the west side of Shasta Street. Defendant was driving his automobile north on Shasta Street, and first observed the children playing in the street when he was at Tea Garden Avenue. There was no obstruction to defendant's view of the children from Tea Garden Avenue to the point of accident, and he saw the children at all times thereafter as he approached them. He claims that he was driving between ten and fifteen miles an hour on the right, or east half of Shasta Street. When he arrived at a point about fifteen feet from the children, he noticed that the plaintiff was standing still about four feet east of the center line of Shasta Street, with his head turned away from defendant, and looking down. The evidence on behalf of defendant shows that he was at the time driving straight up the street on a course that would carry him within two or three feet of plaintiff; that he did not vary his course either to the left or the right until the accident happened, when he swerved slightly to the right. At one time defendant testified that he sounded his horn when the front of his automobile was about opposite the plaintiff. Later he qualified that statement and was not positive, although he thinks he sounded his horn.

The testimony further shows that when defendant was about opposite the plaintiff, the plaintiff, without warning, suddenly whirled to his right and ran against the running-board of defendant's car, was knocked down and run over, and sustained a broken leg and thumb.

The testimony is conflicting as to whether defendant sounded his horn immediately before or immediately after he struck the plaintiff. There is also a conflict in the testimony as to what part of the street the plaintiff was standing on at the time of the accident—whether on the west or the east half of the street. The defendant places it at four feet east of the center, but also testifies that there was only five or six feet between the right side of his automobile

and the east curb of the street. Of necessity, if plaintiff was four feet east of the center of the street, and defendant was driving on a line two or three feet east of the plaintiff, then the defendant had much more clear space to his right than five or six feet. If, on the other hand, defendant had but five or six feet clear space between the right side of his automobile and the east curb line of the street, and the left side of his automobile came within two or three feet of where the plaintiff was standing when he whirled and stepped against the automobile, then, of necessity, the plaintiff was more than four feet east of the center line of the street. In either event it is admitted by defendant that he drove his automobile at from ten to fifteen miles an hour on a straight line, that would, and did, bring him within two or three feet of a three year old child who had been playing in the street, and was at the time standing still, facing away from the automobile and apparently oblivious to the close proximity of the automobile. The automobile was a Chevrolet and was laden with two people and sixteen sacks of sand, and was equipped with two-wheeled brakes. If, under those circumstances, the defendant failed to sound his horn until he was within two or three feet of the child, and then sounded it, he, as a reasonable man, should have been fearful that the child, thus startled by the nearness of the horn, might well be expected to spring into the path of the automobile, and, hence, that ordinary care on his part should have led him to give way to his right, for, according to his testimony, he had from five to six feet to his right, or, if he must proceed in a straight course that would carry him within two or three feet of a small child apparently unconscious of his approach, neither yielding to the right nor to the left, he should have slowed down or stopped his machine until the hazard that confronted him had been removed. Defendant testified that the children were in the street nearly every day, and that he did not consider it necessary for him to give way to his right. Possibly defendant sought to frighten the child, thereby keeping him out of the street. But in any event, his failure to stop, or slow down, or turn aside, we are forced to conclude, was negligence as a matter of law.

The next question is, Was the plaintiff guilty of contributory negligence? To this question there can be but

one answer, and that is in the negative. Even if it were negligence for a child of three years of age to stand in or near the center of a city street and look down, apparently unaware of the approach of an automobile, we are unable to see that such negligence contributed proximately to the injury that came to him by reason of the negligence of the defendant in the manner hereinbefore stated. By the exercise of ordinary care defendant should have seen and realized that plaintiff was unaware of the approach of the automobile, and his failure so to do placed upon him the whole blame for the accident.

Defendant in his brief asserts: "If the children had continued playing in the street, showing that they had not observed the approach of defendant's automobile, then it would have been the duty of defendant to stop his car or take some other precaution in plenty of time to have avoided hitting any of them. However, in the case at bar, all of the children had given evidence that they had observed defendant's car and made room for him to pass. This amounted to an invitation to proceed." But respondent's assertion that the children had given evidence that they had observed defendant's car and made room for him to pass is not supported by the evidence. We have carefully read and reread the testimony, and find nothing in it to justify respondent's assertion. On the contrary, the defendant testified on that subject as follows: "Q. As you came near Sumner street, what or who did you see in the street? A. There was a bunch of children playing in the street. . . . Q. Where were those children with reference to the center line of the street? A. Around the center of the street. Q. Did you say some of them were on the righthand side and some on the lefthand side of the center line? A. Yes. Q. What were they doing? A. Playing. Q. How many children were there? A. Eight or nine, I should judge. . . . You could see them clear from Tea Garden avenue. Q. That is when you first saw the children? A. Yes, sir. . . . Q. Describe what happened as you got opposite the group of children? A. When I got opposite the group of children, this one little fellow whirled around and ran right into the car. . . . Q. How far was your car from him when he broke from the group and started toward you? A. Two or three feet. . . . As I approached, the boy stopped playing

in the street and stood still in the street. Q. Now, this child that broke from the group and ran toward the car, what direction was he looking when you first noticed him? A. Looking west. Q. Looking west. That would be looking away from your car? A. Yes. . . . The child whirled toward his right, away from the car, and turned completely around and ran into the car. . . . He whirled north and then right square east into the car.''

Mrs. Marie Peterson, who was riding in Mr. Jenny's car, testified concerning the movements of the children, as follows: ''Q. Now, as you got near the upper end of Shasta street, did you see some children playing in the street? A. Yes. Q. What part of the street were they playing in? A. Three of them on that side of the middle of the street, and four or five on the east side . . . Q. How far was your automobile from this little boy when you first saw him? . . . A. I guess two or three feet . . . Q. How far was your automobile south when you first saw the boy? A. I saw him from the other block . . . Q. When you were on Tea Garden avenue? A. Yes. Q. From the time you saw them, did they stay in the same place all the time? A. Yes; they stand still as long as I see them. Q. From the time you saw them when you were crossing Tea Garden avenue, until you got opposite, he didn't move? A. They stood still . . . Q. When he started to turn, where was the front of this automobile? A. Right even with him . . . Q. When he started to turn, the automobile was right here? A. Yes, one or two feet. Q. He was looking that way? A. Looking right down, as far as I could see. Q. Wasn't he looking down? A. His head was down—standing just like that, but his head was down.''

Had the child been concealed from defendant, or if he had been looking at defendant, and defendant could see that the child saw him, and if, under such circumstances, the boy had darted out into the path of defendant's automobile, there might have been some ground for defendant's contention that this was an unavoidable accident, but under the circumstances appearing from the foregoing quotation from the testimony, we are of the opinion that there was no basis in fact for the giving of the following instruction: ''An unavoidable accident is one which occurs despite the exercise of reasonable care on the part of all concerned to

avoid it. There can be no recovery by plaintiff for injuries received as a result of such an accident. If you find that the injuries of plaintiff was the result of an unavoidable accident, then in such a case you will render your verdict in favor of defendant.''

We are of the opinion, therefore, that the instruction was misleading, and that the giving of it constituted reversible error.

Complaint is made of the following instruction given at the request of defendant, namely: ''I instruct you that if a person, without fault on his part, is suddenly put into a situation where a collision is imminent, without sufficient time to consider all the circumstances, he is excusable for omitting some precautions or making an unwise choice under this disturbing influence, although if his mind had been clear he ought to have done otherwise.''

.It is contended that the instruction ignores the question of whether or not the situation was brought about by the negligence of the plaintiff, or was due wholly to the negligence of the defendant. We do not consider the instruction objectionable for that reason. The use of the word ''fault'' instead of the word ''negligence'' in the instruction could not, we think, in view of the instructions as a whole, have been misunderstood by the jury. But the evidence is, without conflict, that the defendant brought about the situation that confronted him by his own gross negligence, and that in acting as the evidence shows he acted, he was guilty of negligence as a matter of law. There is no evidence to support the instruction, and for that reason, the giving of it must have been misleading to the jury, and its giving constituted reversible error.

■ Complaint is made by appellant that the court did not instruct the jury on the doctrine of the last clear chance, and that such an instruction should have been given. It is true that an instruction on that subject might properly have been given from the plaintiff's standpoint, whether the plaintiff was in a position of danger from which he knew he could not escape, and from which defendant knew it was physically impossible for him to escape, or whether the plaintiff was in a place of danger due to the fact that he did not know of the danger, and which danger was apparent to defendant, when by the exercise of ordinary care

defendant could have avoided the accident. But the record fails to show that any such instruction was either submitted to the court, or that the court was requested to give such an instruction, and, under the well-settled rule, complaint under such circumstances is unavailing. (*Castagnino* v. *Balletta,* 82 Cal. 262 [23 Pac. 127]; *Wyatt* v. *Pacific Elec. Ry. Co.,* 156 Cal. 176 [103 Pac. 892].)

■ Complaint is also made of the following instruction offered by defendant and given by the court: "Even if you find that defendant was not using usual and ordinary care, and was therefore negligent, yet if you find from all the evidence in the case that the plaintiff immediately preceding the accident which resulted in the injuries to him, was walking or standing on the westerly side of Shasta street, and that while he was so walking or standing, said plaintiff suddenly and without warning ran into and collided with the automobile of the defendant, whose automobile at said time was on the easterly side of Shasta street proceeding northerly; and if you further find from the evidence that the said plaintiff in so acting, failed to exercise that degree of care which a child of his maturity and capacity, under similar circumstances, ordinarily exercises for his own protection, and that in so acting he contributed proximately to the accident which resulted in plaintiff's injuries, then and in that event the plaintiff cannot recover, and your verdict must be in favor of defendant."

This instruction is objectionable for the reason that it is argumentative, and also instructs the jury on a question of fact, namely, that defendant's automobile was, at the time of the accident, on the east side of Shasta Street, whereas the testimony was sharply conflicting as to whether the automobile was on the east or the west side of Shasta Street at the time of the accident. The question, therefore, as to which side of the street the automobile was on, was taken from the jury, and the giving of it constituted reversible error.

The other instructions of which appellant complains, when considered in connection with other instructions given that are not objectionable, substantially and correctly stated the law.

■ Likewise, the refusal to give certain instructions requested by plaintiff and refused by the court, which cor-

rectly stated the law, was not error, for the reason that the subjects covered by them were substantially covered by other instructions given by the court. Under such circumstances their refusal was not error. (*Offerdahl* v. *Motor Transit Co.*, 80 Cal. App. 667 [252 Pac. 773].)

The judgment is reversed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 24, 1933, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 25, 1933.